```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X

J & J SPORTS PRODUCTIONS, INC., as
Broadcast Licensee of the May 2,
2009 Pacquiao/Hatton Broadcast,

                    Plaintiff,
                                              MEMORANDUM & ORDER
        -against-

LDG WILLIAMS, LLC, d/b/a                      11-CV-2145 (KAM)
COSTUMBRE BAR & RESTAURANT
and DELORES WILLIAMS,

                    Defendants.
-------------------------------------X
```

**KIYO A. MATSUMOTO, UNITED STATES DISTRICT JUDGE:**

J & J Sports Productions, Inc., ("Plaintiff") brings this action against Delores Williams ("Williams"), individually, and LDG Williams, Inc., d/b/a Costumbre Bar & Restaurant in Brooklyn, New York (the "Establishment") (collectively, "Defendants"),[1] for alleged violations of the Federal Communications Act of 1934, codified as amended, 47 U.S.C. §§ 553 and 605.

---

[1] The complaint does not explicitly allege a relationship between Williams and the Establishment.  Furthermore, although Plaintiff's complaint defines Williams and the Establishment collectively as "Defendants" (*see* ECF No. 1, Complaint ("Compl.") ¶ 6), Plaintiff uses the defined term inconsistently throughout the complaint.  The complaint often refers to "Defendants" (*see id*. ¶¶ 14, 19), but it also references a "defendant" (*see id*. ¶ 12) and "Defendant" (*see id*. ¶¶ 12, 14-18) without specifying *which* defendant is being discussed.  Consequently, as explained *infra*, the court finds that the complaint alleges sufficient facts to establish liability of the corporate defendant, but not the individual defendant.

1

Upon failure of Defendants to appear, answer or respond to the complaint, Plaintiff now moves for (1) entry of a default judgment; (2) statutory damages of up to $10,000; and (3) enhanced damages of up to $100,000 against Defendants for violation of 47 U.S.C. §§ 553 and 605(a).  Plaintiff also seeks payment of costs and interest on the judgment.  Defendants have not submitted any opposition to Plaintiff's motion, despite having received notice and an opportunity to do so.  (*See* ECF No. 3, LDG Williams Summons, dated May 23, 2011; ECF No. 4, Dolores [sic] Williams Summons, dated May 23, 2011; ECF No. 5, Dolores [sic] Williams Summons, dated May 30, 2011 (collectively, "Summonses"); ECF No. 6, Certificate of Service, dated June 8, 2001.)

For the reasons set forth below, the court grants Plaintiff's motion for entry of default judgment against LDG Williams, Inc. d/b/a Costumbre Bar & Restaurant and, pursuant to 47 U.S.C. §§ 605(e)(3)(C)(i)(II), 605(e)(3)(C)(ii) and 605(e)(3)(B)(iii), orders that judgment be awarded in favor of Plaintiff in the amount of $5,538.30, inclusive of statutory damages of $2,534.15, enhanced willfulness damages of $2,534.15 and costs of $470.  Plaintiff will also be entitled to interest on the judgment at the post-judgment rate proscribed by law, accruing from the date of entry of judgment until the date the judgment is paid in full.  The court also grants Plaintiff's

motion for entry of a default judgment against Williams, in the amount of $0, given that Plaintiff has failed to establish that Williams is liable for damages.

## BACKGROUND

According to the complaint, Plaintiff acquired the rights to distribute the Pacquiao/Hatton boxing match, including undercard and preliminary bouts, held on May 2, 2009 (the "Event"), which was broadcast via closed-circuit television. (Compl. ¶ 7.) Plaintiff contracted with various establishments in New York State, authorizing those entities to publicly broadcast the Event to their patrons. (*Id.* ¶ 8.) Plaintiff provided those establishments with electronic decoding equipment and the satellite coordinates necessary to receive the signal for broadcasting the Event. (*Id.* ¶ 13.) If Defendants had purchased the transmission of the Event from Plaintiff, Defendants would have been authorized to receive, transmit and publish the Event in the Establishment. (*Id.* ¶ 12.)

Plaintiff also contracted with an investigative agency to visit various establishments in the New York City area on the night of the Event. (*See* ECF No. 12, Ex. 2, Affidavit of Joseph Gagliardi, dated July 25, 2011 ("Gagliardi Aff.") ¶ 6.) Plaintiff provided to the investigators a list of authorized establishments that had paid the required fee to broadcast the Event, so that the investigators would visit only locations that

3

were not authorized to broadcast the Event. (*Id.*) Plaintiff includes with its motion for default judgment the affidavit of an independent investigator who visited the Establishment on May 2, 2009, at approximately 10:25 p.m. (ECF No. 10, Ex. 2, Affidavit of E. Covington, dated May 4, 2009 ("Covington Aff.").) At that time, the investigator observed two television sets exhibiting the Event and approximately seventeen individuals in the Establishment, which had an unknown maximum occupancy. (*Id.*)

According to the complaint, Defendants' broadcast of the Event was not authorized by Plaintiff, and could not have been mistakenly or innocently intercepted. (Gagliardi Aff. ¶¶ 7, 9.) Plaintiff states that such unauthorized broadcasts "cannot occur without the willful and intentional modification of electronic equipment . . . [or] the removal of cable traps or devices designed to prevent such unauthorized exhibits . . . ." (*Id.* ¶ 13.)

Plaintiff filed the instant action on April 28, 2011 and served the Summonses and complaint on Defendants on May 23, and May 30, 2011. (*See* Summonses; ECF No. 9, Affidavit for Judgment by Default.) Defendants have not appeared, answered or otherwise responded to the complaint.

4

**DISCUSSION**

**A.   Liability of the Corporate Defendant**

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that the court may enter default upon motion against an adverse party who has failed to answer or otherwise appear in an action.  When a default is entered, the defendant's failure to respond constitutes an admission of the well-pleaded factual allegations in the complaint, except as to allegations relating to damages.  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("[W]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (same).

As noted above, Plaintiff's complaint invokes 47 U.S.C. §§ 553 and 605(a) ("Section 553" and "Section 605(a)," respectively).  Section 553(a)(1) provides that:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

Section 605(a)(6) provides that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.  No person not being entitled thereto

5

> shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Though Section 553 applies to cable transmissions and Section 605 applies to radio transmissions, courts have held that Section 605 applies to "cable borne transmissions [that] originate as satellite transmissions." *Kingsvision Pay-Per-View Corp., Ltd. v. Keane*, No. 02 CV 5173, 2006 WL 1704474, at *3 (E.D.N.Y June 16, 2006). Both statutes apply when television programming is transmitted over both cable and satellite. *Int'l Cablevision v. Sykes*, 75 F.3d 123, 133 (2d Cir. 1996).

**B.   Damages**

In the context of a motion for default judgment, allegations pertaining to liability are deemed admitted, but those pertaining to damages must be proven by the movant. *Greyhound*, 973 F.2d at 158. No hearing is required, however, because Plaintiff seeks statutory damages, rather than actual damages, and because Defendants have not responded to Plaintiff's allegations despite having had notice and an opportunity to do so. *Transatlantic Marine Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (quoting *Fustok v. ContiCommodity Serv., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). In lieu of a hearing, a court "may rely on detailed affidavits or documentary evidence" in assessing damages. *Fustok*, 873 F.2d

6

at 40. Thus, the court may grant damages in the amount for which the movant has shown adequate support. *Greyhound*, 973 F.2d at 159.

In the instant action, Plaintiff's motion for default seeks damages under Sections 553 and 605(a).[2] Though Plaintiff has demonstrated the Establishment's violation of both Sections 553 and 605(a), Plaintiff is entitled to recovery only under the latter provision. *Garden City Boxing Club, Inc. v. Perez*, No. 05 CV 3713, 2006 WL 2265039, at *5 (E.D.N.Y. Aug. 8, 2006)

---

[2] Additionally, the Plaintiff seeks damages under 47 U.S.C. § 605(e)(4) ("Section 605(e)(4)"), which provides that:
> Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming. . . shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both.

In the complaint, Plaintiff alleges that Defendants violated Section 605(e)(4) based "[u]pon information and belief" that Defendants modified decoding equipment to intercept the signal. (Compl. ¶ 33.) Plaintiff has failed to state a claim under this section, however, because the complaint includes "no factual assertion to support a finding that defendants are no more than ultimate consumers or end users of an illegally modified device." *Garden City Boxing Club, Inc. v. Morales*, No. 05 CV 0064, 2005 WL 2476264, at *5 (E.D.N.Y. Oct. 7, 2005) (internal citations omitted); *see J&J Sports Prods., Inc. v. Hot Shots, Inc.*, No. 09 CV 1884, 2009 WL 3366316 (E.D.N.Y. Oct. 16, 2009) ("Plaintiff has not . . . stated a claim under 47 U.S.C. § 605(e)(4), since the complaint contains no allegations that Defendants were anything other than interceptors of the Event's communication or end users of an illegal device."). Therefore, the court will not grant damages to Plaintiff under Section 605(e)(4).

7

(citing *Sykes*, 997 F.2d at 1007 ("Where . . . a violation of both Section 605 and Section 553 has been established, the Second Circuit has held that the court should award damages pursuant to Section 605.").

Plaintiffs seeking compensation for damages and lost profits under Section 605 may elect to seek either actual damages and lost profits or statutory damages. *See* 47 U.S.C. § 605(e)(3)(C)(i); *see also Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999). Plaintiff here seeks statutory damages. (ECF No. 12, Mem. of Law in Support of Default Judgment, dated August 8, 2011 ("Pl. Mem."), at 8-9.) Where a party elects to recover statutory damages, it may recover an award of $1,000 to $10,000 for each violation of § 605(a). 47 U.S.C. § 605(e)(3)(C)(i)(II). The court, in its discretion, may award up to an additional $100,000 in enhanced damages where the violation was willful and was committed for commercial advantage or financial gain. 47 U.S.C. § 605(e)(3)(C)(ii).

As other courts have noted, Section 605 provides no statutory definition of the term "violation." *See Perez*, 2006 WL 2265039, at *5. "However, most cases applying this statute in a commercial context have interpreted the showing of an event on a single night as one violation." *Id*. "In determining the amount of damages that can be imposed for each violation within

8

the range of $1,000 to $10,000 per violation, Section 605 leaves the decision within the sound discretion of the court." *Id.*

Courts in this Circuit have relied upon either of two methods for calculating statutory damages in cases involving the unauthorized receipt and exhibition of pay-per-view events. *See Googies Luncheonette*, 77 F. Supp. 2d at 489. The first method assesses the award of damages based on the number of patrons in the establishment who viewed the unauthorized broadcast. *See, e.g., Time Warner Cable v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (awarding damages on a per-patron basis). The second method awards a flat sum for each violation. *See, e.g., Entm't by J&J, Inc. v. Suriel*, No. 01 Civ. 11460, 2003 WL 1090268, at *1 (S.D.N.Y. Mar. 11, 2003) (awarding a flat sum of $11,000 for basic and enhanced damages); *Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 442-43 (S.D.N.Y. 2001) (awarding a flat sum of $15,000 for basic and enhanced damages).

In cases where there is uncontradicted evidence of the number of patrons viewing the match in an establishment, courts have used the first approach and multiplied the number of patrons by a set sum, the price to view the event at home on a pay-per-view channel, *see, e.g. J&J Sports Prods., Inc. v. Arhin*, No. 07 CV 2875, 2009 WL 1044500, at *6 (E.D.N.Y. Apr. 17, 2009) ($54.95 per patron), plus any cover charges or other

profits attributable to the unauthorized viewing. This is based on the theory that the patrons who watched the unauthorized broadcast would have ordered it individually for residential use. *See Googies Luncheonette*, 77 F. Supp. 2d at 490.

Notably, however, courts use per-patron calculations as a "starting point" for calculating damages (*Entm't by J&J, Inc. v. Nina's Rest. and Catering*, No. 01 Civ. 5483, 2002 WL 1000286, at *3 (S.D.N.Y. May 9, 2002)) rather than as an exhaustive analysis where the sum of per-patron damages is less than the fee that an establishment would have paid for a sub-license to broadcast the event. *See J&J Sports Prods., Inc. v. Meson de Colombia, Inc.*, No. 10 CV 1142, 2010 WL 4791771, at *3 (E.D.N.Y. Oct. 7, 2010). In *Meson de Colombia*, for example, the court awarded $1,500 in statutory damages based on the sub-license fee because the per-patron sum was "slightly less" than the sub-license fee. 2010 WL 4791771, at *3.

Additionally, some courts have noted that simply awarding sub-license fees as a basis for damages does not result in "sufficient deterrence." *Nina's Rest. and Catering*, 2002 WL 1000286, at *3; *see also Entm't by J&J, Inc. v. Friends II, Inc.* No. 02 Civ. 585, 2003 WL 1990414, at *4 (S.D.N.Y. Apr. 25, 2003) ("There would be no incentive to legally air closed-circuit programming if the penalty were merely the amount that should have been paid.") Therefore, to effectively deter

10

establishments from illegally broadcasting programs, courts have increased initial damages, which are based on sub-license fees. *See Nina's Rest. and Catering*, 2002 WL 1000286, at *3 (increasing damages from $1,000 based on sub-license fees to $2,500); *see also Friends II, Inc.*, 2003 WL 1990414, at *4 (increasing damages from $1,500 based on sub-license fees to $3,000).

Here, Plaintiff seeks $10,000, the statutory maximum under 47 U.S.C. § 605(e)(3)(C)(i)(II). (Pl. Mem. at 8.) The investigator's affidavit states that seventeen individuals were present when the investigator observed the broadcast of the Event, and that the capacity of the Establishment was unknown. (Covington Aff.) Additionally, the "typical" purchase price for a pay-per-view broadcast of this nature is $54.95 per patron. *Arhin*, 2009 WL 1044500, at *6. Thus, the per-patron analysis method of calculating statutory damages would yield a total award of $934.15 ($54.95 x 17 patrons). Notably, however, this sum is substantially lower than $1,600, the fee that Plaintiff would have charged the Establishment for a sub-license to broadcast the Event. *See* ECF No. 10, Ex. 3, Prices of Event Broadcast; Gagliardi Aff. ¶ 8. Therefore, because an award of $1,600 in damages would not constitute "sufficient deterrence," the court will increase the award of statutory damages to $2,534.15 ($1,600 sub-license fee + $934.15 per patron

11

analysis). *Nina's Rest. and Catering*, 2002 WL 1000286, at *3; *see also Friends II, Inc.*, 2003 WL 1990414, at *4.

Plaintiff further seeks an enhancement of damages for willfulness of up to $100,000, pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). (Pl. Mem. at 14.) To receive enhanced damages, Plaintiff must prove that the Establishment's broadcast of the Event was willful and for "purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). The broadcast of an event without authorization is a deliberate act, and thus establishes willfulness. *See Taco Rapido Rest.*, 988 F. Supp. at 111; *Googies Luncheonette*, 77 F. Supp. 2d at 490-91.

Furthermore, the Establishment incurred financial gain by broadcasting the Event because it "most likely led to an increased number of patrons, and thus to an increase in profits from food and beverages," even if the Establishment did not advertise the Event or charge a cover fee. *Taco Rapido Rest.*, 988 F. Supp. at 111; *see also J&J Sports Prods. v. Alvarez*, No. 07 Civ. 8852, 2009 WL 3096074, at *5 (S.D.N.Y. Sep. 25, 2009) (inferring that the illegal broadcast of the event increased the sale of food and beverages). Consequently, Plaintiff is entitled to a further enhancement of the damages award because the record reflects that the Establishment affirmatively and willfully intercepted the Event for financial gain, and that

12

there is no way that the Establishment could have inadvertently intercepted Plaintiff's broadcast. (Gagliardi Aff. ¶ 9.)

In circumstances demonstrating such willful and purposeful violation, it is appropriate to assess enhanced damages in conjunction with statutory damages. Here, the court finds that it is appropriate to double the initial damages award of $2,534.15 to account for willfulness. *See, e.g., Nina's Rest. and Catering*, 2002 WL 1000286, at *3 (doubling the damages award to account for willfulness); *Entm't by J&J, Inc. v. Friends II, Inc.*, No. 2 Civ. 585, 2003 WL 1990414, at *4 (S.D.N.Y. Apr. 25, 2003) (same). Accordingly, the court awards Plaintiff $5,068.30 in total damages ($2,534.15 x 2).

**C. Costs and Interest**

Plaintiff's motion requests costs in the amount of $470 and interest pursuant to a statutory rate of nine percent per year beginning on May 2, 2009.[3] (Pl. Mem. at 18.) An award of costs is mandatory under 47 U.S.C. § 605(e)(3)(B)(iii). The court has reviewed Plaintiff's request for costs and finds that Plaintiff has submitted documentary evidence to support its request for $470 in costs, which includes $350 for the filing fee to commence this action and $120 for service of the Summonses and complaint upon Defendants. (ECF No. 9, Statement

---

[3] The Court notes that the Plaintiff here does not seek attorney's fees. (ECF No. 10, Affirmation in Further Support of Judgment by Default ¶ 31.)

13

of Damages.)  Accordingly, the court awards Plaintiff $470 in costs.

Plaintiff also seeks pre- and post-judgment interest on the damages award.  The court declines to award Plaintiff pre-judgment interest.  Plaintiff is entitled, however, to post-judgment interest on damages from the date of entry of judgment until the date judgment is paid in full.  Post-judgment interest accrues at the federal statutory rate until the judgment is paid.  28 U.S.C. § 1961.

**D.   Liability of the Individual Defendant**

Although Plaintiff names Delores Williams as an individual defendant (*see* Compl. ¶ 6), Plaintiff has not alleged sufficient facts to support an entry of default judgment against her.  There are two methods of proving individual liability under 47 U.S.C. § 605(a): (1) "contributory infringement" or (2) "vicarious liability."  *Kingvision Pay-Per-View Ltd. v. Olivares*, No. 02 Civ. 6588, 2004 WL 744226, at *5 (S.D.N.Y. Apr. 5, 2004).  Under the first method, an individual is liable for "contributory infringement . . . [if he or she] 'authorize[s]' the violations."  *Olivares*, 2004 WL 744226, at *5 (citing *Softel Inc. v. Dragon Med. & Sci. Commc'ns*, 118 F.3d 955, 971 (2d Cir. 1997)).

Under the second method, an individual is vicariously liable if he or she "had a 'right and ability to supervise' the

14

infringing activities and had 'an obvious and direct financial interest in the exploitation of [the] copyrighted materials.'" *Olivares*, 2004 WL 744226, at *5 (quoting *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963)). Furthermore, if a complaint sufficiently alleges that an individual is "an officer, director, shareholder and/or principal" of the business, individual liability under the second method is established. *J&J Sports Prods., Inc. v. Welch*, No. 10 CV 0159, 2010 WL 4683744, at *6 (E.D.N.Y. Nov. 10, 2010).

Plaintiff has not alleged sufficient facts in the complaint to support a finding of individual liability under either method. First, although Plaintiff alleges that a "Defendant assisted in the receipt of the interstate communication of the Event," Plaintiff fails to specify which defendant and fails to include any allegations that *Williams* authorized the broadcast of the Event. (Compl. ¶ 14.) Additionally, Plaintiff's complaint does not explicitly allege any specific claims against Williams or that Williams had a "right and ability to supervise" the broadcast; thus, Plaintiff fails to establish an entitlement to damages against Williams under the second method. *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963).

As the complaint fails to make sufficient allegations that Williams either authorized the broadcast or supervised the

15

broadcast, the court will not hold Williams individually liable for damages. See *Jin Yung Chung v. Sano*, No. 10 CV 2301, 2011 WL 1298891, at *2 (E.D.N.Y. Mar. 31, 2011) ("[W]hile all well-pleaded factual allegations in the complaint are accepted as true upon entering a default, the district court may still deny a motion for default judgment where the complaint fails to state a cause of action.")

## **CONCLUSION**

For the foregoing reasons, the court (a) grants Plaintiff's motion for entry of default against the Establishment and (b) enters judgment against the Establishment in the total amount of $5,538.30, comprised of statutory damages of $2,534.15, enhanced damages of $2,534.15 and costs of $470. Additionally, the court awards to Plaintiff post-judgment interest on the judgment at the federal post-judgment rate from the date of entry of judgment until the date judgment is paid in full. The court also grants Plaintiff's motion for entry of default judgment against Williams, in the amount of $0, because Plaintiff has failed to establish that Williams is liable for damages.

/

/

/

/

The Clerk of the Court is respectfully directed to enter judgment in favor of the Plaintiff and against the Establishment in the amount of $5,538.30, and against Williams in the amount of $0, and to close this case. Plaintiff is ordered to serve a copy of the Memorandum and Order on defendants and file a declaration of service by November 10, 2011.

**SO ORDERED.**

Dated:     November 7, 2011
           Brooklyn, New York

                                                  /s/
                                    **KIYO A. MATSUMOTO**
                                    United States District Judge
                                    Eastern District of New York